UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                                     :
GEORGE IRELAND,                                                      :   12-CV-6315 (ARR)(RLM)
                                                                     :
                        Plaintiff,                                   :   OPINION & ORDER
                                                                     :
        -against-                                                    :
                                                                     :
AMR CORPORATION and AMERICAN AIRLINES,                               :
INC.,                                                                :
                                                                     :
                        Defendants.                                  :
                                                                     :
-------------------------------------------------------------------- X

ROSS, United States District Judge:

In this action, George Ireland ("plaintiff" or "Ireland") seeks damages for injuries he suffered while aboard a flight operated by American Airlines, Inc. ("American") between Miami, Florida, and Kingston, Jamaica. American and its parent company, AMR Corporation (jointly, "defendants"), have moved to dismiss Ireland's complaint on the grounds that he did not commence suit within two years of the date of the flight's arrival in Jamaica as required by the Montreal Convention, which the parties agree governs this action. Plaintiff argues that his time for commencing suit was extended by the defendants' filing for bankruptcy, which resulted in an automatic stay on litigation against defendants. The question that must now be addressed is whether the automatic bankruptcy stay extended plaintiff's two-year period for filing his claim under the Montreal Convention. For the reasons stated below, the court agrees with defendants that the bankruptcy stay did not extend plaintiff's filing period, and their motion to dismiss is granted.

1

**BACKGROUND**

On December 22, 2009, Ireland was a passenger on American Flight 331 between Miami, Florida, and Kingston, Jamaica.[1] Compl., DE #1, ¶¶ 11-13, 16-17. Flight 331 was operated by defendants, and the members of the flight crew were American employees. Id. ¶¶ 13-14. While landing on Runway 12 at Norman International Airport in Kingston, Jamaica, at approximately 10:22 p.m., Flight 331 ran off the end of the runway.[2] Id. ¶ 18. The aircraft veered off the runway, went through a perimeter fence, crossed a road, and came to rest on a rocky beach approximately 175 feet beyond the end of Runway 12 and approximately 40 feet from the water line. Id. ¶ 22. As a result of its departure from the runway, the aircraft fuselage was broken into three pieces. Id. ¶ 23.

On December 21, 2012, plaintiff filed suit in this action. In his complaint, he alleges that the negligence of defendants and their employees caused the landing accident and that, as a result, he suffered "severe mental anguish, fear of impending death, and . . . severe physical injuries." Id. ¶¶ 24-25. He seeks at least $1,000,000 in damages. Id. ¶ 26.

On November 29, 2011, prior to plaintiff's commencing this suit, defendants filed voluntary petitions seeking bankruptcy protection under chapter 11 of Title 11 of the United States Code (11 U.S.C. § 101 et seq) (the "Bankruptcy Code"). DE #4. As a result, pursuant to the automatic stay provision in section 362(a) of the Bankruptcy Code, the proceedings in this action were stayed upon the action's commencement. In the interim, while the stay remained in effect, plaintiff did not seek relief from the automatic stay. On January 2, 2014, counsel for

---

[1] For purposes of this motion to dismiss, the court assumes the veracity of the facts alleged in the complaint.
[2] While not relevant to the issues addressed herein, plaintiff alleges that, according to a report from the Jamaica Civil Aviation Authority, Air Traffic Control advised the crew of Flight 331 that a tailwind and wet conditions were affecting Runway 12 at the time. Compl. ¶¶ 20-21. According to the report, despite being offered another approach and different runway, the crew of Flight 331 insisted on landing on Runway 12. Id. ¶¶ 19, 21.

defendants in this action filed notice that the automatic stay had been lifted effective December 9, 2013. DE #13. Following termination of the stay, the parties were directed to continue with proceedings in this action, and defendants moved to dismiss plaintiff's claims.

## DISCUSSION

**I.      Standard of Review**

In ruling on a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Freedom Holdings, Inc. v. Spitzer, 363 F.3d 149, 151 (2d Cir. 2004). The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Only a "plausible claim for relief survives a motion to dismiss." LaFaro v. N.Y. Cardiothoracic Grp., PLLC, 570 F.3d 471, 476 (2d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Under Rule 12(b)(6), "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief," including on the grounds that the plaintiff's claim is time-barred. Jones v. Bock, 549 U.S. 199, 215 (2007); see also Claude v. Peikes, 534 F.3d 801 (2d Cir. 2008) (affirming dismissal of time-barred claims under Rule 12(b)(6)); Harris v. City of N.Y., 186 F.3d 243, 251 (2d Cir. 1999) (stating that, to survive a motion to dismiss as time-barred, all that is required of a complaint are "allegations consistent with a claim that would not be time-barred").

3

## II. Application of Two-Year Limitation Period to Plaintiff's Claim

The parties agree that the Montreal Convention[3] governs plaintiff's negligence claim. Defendants argue that plaintiff's claim must be dismissed because it was not filed within two years of the date of the landing accident as required by Article 35 of the Montreal Convention. Article 35 contains a "limitation of actions" provision that provides:

> 1. The right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived . . . .
>
> 2. The method of calculating that period shall be determined by the law of the court seized of the case.

Ireland did not file suit until December 21, 2012, which was just shy of three years from the date of the accident upon arrival in Jamaica. Accordingly, defendants argue, his suit must be dismissed.

In opposition, plaintiff argues that the running of the two-year limitations period under Article 35 was suspended by the automatic stay that went into effect under section 362 of the Bankruptcy Code upon defendants' filing for bankruptcy on November 29, 2011. Plaintiff relies predominantly on section 108(c) of the Bankruptcy Code, which states in relevant part:

> [I]f applicable nonbankruptcy law . . . fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of–
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

---

[3] The Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 (entered into force on Nov. 4, 2003), reprinted in S. Treaty Doc. No. 106-45 (2003) ("Montreal Convention"). The Montreal Convention governs "all international carriage of persons, baggage or cargo performed by aircraft for reward." Id. Art. 1(1).

> (2) 30 days after notice of the termination or expiration of the stay under section 362 . . . with respect to such claim.

11 U.S.C. § 108(c). Plaintiff argues that, because the two-year period under Article 35 of the Montreal Convention had not yet expired when defendants filed for bankruptcy on November 29, 2011, section 108(c) operated to suspend the running of the two-year period. He submits that, under section 108(c)(2), he had until 30 days after he received notice of the expiration of the automatic stay to file his claim. Notice of the termination of the stay was not given until January 2, 2014---well after plaintiff filed his suit in December 2012. He thus argues that his time to file suit within the Article 35 limitation---what he refers to as a "statute of limitations"---did not run out prior to his bringing this action.

In arguing for dismissal, defendants cite to a line of cases regarding the characterization of the two-year limitation. Although there is a scarcity of precedent discussing Article 35 of the Montreal Convention, which entered into force in 2003, cases considering the effect of Article 35 look to prior case law interpreting an identical provision in Article 29 of the Warsaw Convention, which was the predecessor to the Montreal Convention.[4] See Mateo v. JetBlue Airways Corp., 847 F. Supp. 2d 383, 388 (E.D.N.Y. 2012); Duay v. Cont'l Airlines, Inc., Civ. Action No. H-10-CV-1454, 2010 WL 5342824, at *4 & n.4 (S.D. Tex. Dec. 21, 2010); see also George N. Tompkins, Jr., Liability Rules Applicable to International Air Transportation as Developed by the Courts in the United States 267 (2010). The most cited of these precedents is Fishman v. Delta Air Lines, Inc., 132 F.3d 138 (2d Cir. 1998), in which the Second Circuit deemed the two-year limitation in Article 29 a "condition precedent to suit" and affirmed the lower court's conclusion that it was not subject to a state-law provision allowing tolling for a

---

[4] The legislative history of the Montreal Convention indicates that its drafters intended the body of law that had developed under the Warsaw Convention to be important considerations for courts interpreting the new treaty. Minutes of the Montreal International Conference on Air Law (10-19 May 1999), 218-20.

5

plaintiff's infancy. Id. at 143-45. In Fishman, the Second Circuit looked to the treaty's legislative history, which revealed that "the drafters of the Convention specifically considered and rejected a proposed provision that would have allowed the limitations period to be tolled according to the law of the forum court." Id. at 144. In holding that tolling was unavailable under Article 29, the Second Circuit emphasized that "the main concern of the drafters in rejecting the tolling proposal was 'to remove those actions governed by the Convention from the uncertainty which would attach were they to be subjected to the various tolling provisions of the laws of the member states.'" Id. (quoting Kahn v. Trans World Airlines, Inc., 443 N.Y.S.2d 79, 87 (App. Div. 1981)). A number of other courts have followed the reasoning in Fishman to find tolling unavailable under Article 29 of the Warsaw Convention. Redl v. Nw. Airlines, Inc., 22 F. App'x 652, 654 (8th Cir. 2001) (holding Art. 29 not subject to equitable tolling); Sanchez Morrabal v. Omni Air Servs., Co., 497 F. Supp. 2d 280, 285 & n.10 (D.P.R. 2007) ("[Art. 29] has been consistently interpreted by federal courts as a condition precedent to suit and thus not subject to tolling."); McCaskey v. Cont'l Airlines, Inc., 159 F. Supp. 2d 562, 580-81 (S.D. Tex. 2001) (holding Art. 29 not subject to state-law tolling provision for fraudulent concealment).

Following the Fishman line of cases, the few cases so far decided under the Montreal Convention consider it fairly well settled that the limitation provision in Article 35 creates a condition precedent to suit, rather than a statute of limitations, and is therefore not subject to tolling. See Mateo, 847 F. Supp. 2d at 387-88 (holding two-year limitation "not subject to tolling"); Duay, 2010 WL 5342824, at *4-*5 (same); Dickson v. Am. Airlines, Inc., 685 F. Supp. 2d 623, 627 (N.D. Tex. 2010) (finding limitation to be a "repose provision" or "condition precedent" not subject to tolling); cf. Am. Home Assururance Co. v. Kuehne & Nagel (A.G. & Co.) KG, 544 F. Supp. 2d 261, 263 (S.D.N.Y. 2008) (although not addressing availability of

6

tolling, finding that "the two-year period of limitation constitutes a condition precedent---an absolute bar---to bringing suit") (quotation marks omitted); but see Smith-Ligpn v. British Airways Worldwide, Civ. Action No. 11-7437, 2012 WL 1382468, at *3 (E.D. Pa. Apr. 20, 2012) (referring to two-year limitation as a "statute of limitations" that is a "condition precedent to bringing suit").

In his opposition papers, plaintiff does not directly address the line of cases holding that the two-year limitation provision is a condition precedent not subject to tolling. Instead, he relies principally on a pre-Fishman case from the Southern District of New York and an unreported 2010 case from the Middle District of North Carolina---both of which touched on the interaction of the two-year treaty period with section 108(c) of the Bankruptcy Code. In the first of those cases, New Pentax Film, Inc. v. Trans World Airlines, Inc., 936 F. Supp. 142 (S.D.N.Y. 1996), the court considered the effect of section 108(c) of the Bankruptcy Code on the two-year limitation in Article 29 of the Warsaw Convention. Although referring to the two-year limitation as a "statute of limitations," the court recognized that the drafters of the Warsaw Convention did not intend Article 29 to allow for tolling. Id. at 146. However, it found that section 108(c) did not serve to toll the applicable statute of limitations but rather that it served to extend the applicable time deadline until 30 days after notice of the termination of a bankruptcy stay. Id. at 146-47 ("Section 108(c) thus serves to solidly preserve the rights of a party stayed from commencing or continuing an action against the debtor because of the bankruptcy case.") (quotation marks omitted). The court further found that, because the Bankruptcy Code was not a "local law" but a federal law on equal footing with the Warsaw Convention, the "last in time" principle would apply to the extent that section 108(c) and Article 29 were in conflict. Id. at 147. Accordingly, the Bankruptcy Code, which was enacted more than 40 years after the Warsaw

7

Convention, would prevail, and section 108(c) would extend the deadline for a plaintiff filing suit under the Warsaw Convention until 30 days after the termination of the stay related to a defendant's bankruptcy. Id.

Although New Pentax Film addressed almost the identical issue that the court now faces, the decision in that case does not control the analysis here. First, to the extent New Pentax Film relied on the "last in time" principle, the result would now be reversed because the Montreal Convention came into effect in 2003, which was well after the enactment of the Bankruptcy Code and section 108(c). Second, the court in New Pentax Film treated Article 29's two-year limitation period as a statute of limitations, but two years later the Second Circuit held in Fishman that it was in fact a "condition precedent to suit." This court must consider the extent to which the Second Circuit's characterization of the two-year limitation as a condition precedent should alter the outcome, especially since the reasoning in New Pentax Film looked to the interaction of section 108(c) with statutes of limitations in other non-treaty contexts. Id. at 147.

The second, unreported case that plaintiff invokes, Okeke v. Northwest Airlines, Inc., No. 1:07CV538, 2010 WL 780167 (M.D.N.C. Feb. 26, 2010), dealt with Article 35 of the Montreal Convention. In that case, the court rejected the plaintiff's contention that section 108(c) operated to toll the Article 35 period in the manner of a typical tolling provision, i.e., by stopping the clock on the statute of limitations upon the bankruptcy filing and starting the clock again upon lifting of the bankruptcy stay. Id. at *6. The court reiterated that, under the plain language of section 108(c), the plaintiff would only have until the later of either (1) 30 days after the termination of the stay or (2) the date that the two-year limitations period would otherwise expire in the absence of section 108(c). Id. The court cited New Pentax Film for the proposition that the plaintiff could "avail herself of the [section 108(c)] 30-day extension of the limitation period

8

. . . if that extension is helpful to her." Id. However, the opinion provided no discussion of why section 108(c) should be treated differently from other tolling provisions that do not apply under Article 35. In Okeke, the court assumed that the holding in New Pentax Film was correct without addressing the tension between section 108(c) and the prevailing interpretation of Article 35. In any event, the issue was not determinative in that case because the two-year limitation period ended later than 30 days from the termination of the stay. Id.

Although not cited by plaintiff, another case from the Eighth Circuit---decided under Article 29 of the Warsaw Convention--- also assumed that section 108(c) would operate to extend the two-year limitation period for 30 days after termination of a stay. In Husmann v. Trans World Airlines, Inc., 169 F.3d 1151 (8th Cir. 1999), the plaintiff argued that a Missouri law providing for tolling during bankruptcy should apply under Article 29. The Eighth Circuit relied on Fishman's characterization of Article 29 as a "condition precedent to suit" to reject plaintiff's argument. Id. at 1154. Nonetheless, with regards to the operation of section 108(c), the Eighth Circuit stated:

> The Bankruptcy Code does not provide that a statute of limitations is tolled during the period of bankruptcy. It provides that the action must be commenced within thirty days after notice of the termination or expiration of the stay. In this case, the bankruptcy court terminated the stay on April 6, 1995. . . . [Plaintiff] had thirty days from April 6, 1995 . . . .

Id. at 1153-54 (internal citation omitted). In Husmann, the plaintiff had not filed his claim by the end of the 30-day window, but the court's language suggested that his suit would have been timely if filed by the end of that window. Id. at 1154. The Eighth Circuit neither cited to New Pentax Film nor looked to the "last in time" rule but instead simply assumed without discussion that section 108(c) would apply to the two-year treaty period. See also Linders v. MN Airlines, LLC, No. 4:05CV1489 CDP, slip op. at 4-6 (E.D. Mo. Jan. 23, 2006) (finding Warsaw

Convention claim untimely because not filed during 30-day period following termination of bankruptcy stay).

This court finds neither Okeke nor Husmann persuasive because neither decision gave serious consideration to whether the extension of time provided by 108(c) is available in a treaty case subject to the Article 29/Article 35 language. Moreover, this court is not bound by the decisions of the courts in those cases. It is, however, bound by the Second Circuit's holding in Fishman that the provision language---then found in Article 29 of the Warsaw Convention and now in Article 35 of the Montreal Convention---creates a condition precedent to suit, and that it is not subject to tolling. The court can find no reason why that holding would not apply to prevent the extension of the two-year Article 35 provision even by operation of section 108(c).

The concerns that led the Second Circuit to reject the availability of tolling under New York law in Fishman are equally applicable here. Looking to the legislative history of the provision that now constitutes Article 35 of the Montreal Convention, the Second Circuit agreed with the lower court's conclusion that it was the purpose of the provision's drafters to eliminate the uncertainty that would arise from actions under the treaty being "subjected to the various tolling provisions of the laws of the member states." 132 F.3d at 144 (quoting Kahn, 443 N.Y.S.2d at 87). Although section 108(c) operates differently from a typical stop-the-clock tolling provision of the kind addressed in Fishman, it has the same effect as a tolling provision in that it acts to extend the statute of limitations beyond the date on which it would otherwise expire. See 9B Am. Jur. 2d Bankruptcy § 1734. Subjecting actions under the treaty to this extension of time under section 108(c) creates the same risk of uncertainty that the drafters sought to avoid by creating a hard stop after two years at which time a plaintiff's rights under the treaty were extinguished. It makes little difference that this extension of time arises under

federal bankruptcy law rather than state law, as the concern addressed by the treaty provision involved differences among the rules of member states who were parties to the treaty, not simply among the states within the United States. As the full title of the Montreal Convention suggests, it was the treaty's aim to unify the rules applicable to international air carriage between member states. See Fishman v. Delta Air Lines, Inc., 938 F. Supp. 228, 232 (S.D.N.Y 1996) (citing as a purpose of the predecessor Warsaw Convention "to establish uniformity in the aviation industry with regard to the procedure for dealing with claims arising out of international transportation and the substantive law applicable to such claims") (citation and quotation marks omitted). Under the language of the treaty, as interpreted by Fishman, the two-year limitation is a hard stop after which a plaintiff's right to sue is extinguished, and this court sees no reason to depart from this rule in the case of a bankruptcy stay.

As regards plaintiff's policy argument that, if section 108(c) is not applied to extend the two-year limitation period, injured parties such as plaintiff will be unfairly prevented from asserting their claims under the Montreal Convention, the court finds this argument without merit. First, plaintiff argues that he would have been unable to file suit during the pendency of the bankruptcy stay, and yet he did precisely that. If he had filed suit within the two-year limitation period but after the filing of the bankruptcy petition, his action would have been stayed until it could proceed following the lifting of the stay, which is exactly what has occurred in this case. Moreover, although plaintiff here did not do so, he could have applied to the bankruptcy court to lift the stay for purposes of this suit. Second, it is difficult to see how any unfairness that might be worked here is different from the kind of unfairness inherent in situations where tolling on other statutory or equitable grounds is unavailable to extend Article 35's two-year limitation period. In rejecting local tolling provisions in favor of a hard-stop two-year limitation provision,

the provision's drafters apparently concluded that the benefits of uniformity outweighed the risk of unfairness. This is why the Second Circuit held in Fishman that the two-year limitation period could not be tolled for a plaintiff's infancy despite any resulting unfairness, and this court cannot find any factor to materially distinguish the case at hand.

Because plaintiff did not file his complaint within the two-year period following the crash in Jamaica, his right to bring suit under the Montreal Convention was extinguished, and the defendants' bankruptcy did not operate to keep plaintiff's claim alive beyond the time period dictated by Article 35 of the Convention. As a result, plaintiff's suit cannot now go forward.

## CONCLUSION

For the foregoing reasons, defendants' motion is granted, and plaintiff's action is dismissed. The Clerk of this court is directed to enter judgment accordingly.

SO ORDERED.

                                                                                    _/s/_____
                                                                                    Allyne R. Ross
                                                                                    United States District Judge

Dated:       May 15, 2014
               Brooklyn, New York